IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD DAVIS, | § | CASE NO. 07-33986-H3-7 |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| PHILIPPE TANGUY, | § | |
| 13,500 AIR EXPRESS, LLC AND | § | |
| 13,5000 AIR EXPRESS, L.P., | § | |
| | § | |
| Appellants/Defendants, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-1194 |
| | § | ADVERSARY NO. 09-3096 |
| WILLIAM G. WEST, CHAPTER 7 | § | |
| TRUSTEE, | § | |
| | § | |
| Appellees/Plaintiffs. | § | |

### OPINION AND ORDER AFFIRMING BANKRUPTCY COURT OPINION

The above referenced cause, H-10-1194, is an appeal by Appellants Philippe Tanguy, Individually, 13,500 Air Express, L.L.C., and 13,500 Air Express, L.P. of the Bankruptcy Court's Memorandum Opinion and Judgment[1] of March 30, 2010 and its oral order denying demand for jury trial entered in the Minutes of the Pretrial Conference on November 24, 2009 in Adversary No. 09-03096, Bankruptcy Case No. 07-33986-H3-7.

As a threshold matter, since the briefing in this case took

---

[1] Copies at #2-12, pp. 7-22.  The Bankruptcy Court concluded that Appellants were liable to Appellee, as holder of the promissory note in dispute, jointly and severally for $1,183,090.80 for unpaid principal and interest, plus $32,180.75 for attorney's fees, plus post judgment interest.

place before the United States Supreme Court issued *Stern v,. Marshall*, 131 S. Ct. 2594 (2011), the Court requested the parties to address whether the case was relevant to the instant bankruptcy appeal (#19).   After reviewing these briefs and other applicable law, the Court agrees with  Appellee William G. West, chapter 7 trustee for Debtor Richard Davis, for the reasons he states (#21) that *Stern* does not apply here.   Accordingly this Court proceeds with its review.

Appellee William G. West, the appointed Chapter 7 Trustee for Debtor Richard Davis' estate, argues that the Bankruptcy Court's judgment should be affirmed in its entirety and that Appellants should be ordered to reimburse the bankruptcy estate for the Trustee's costs and fees incurred in responding to this appeal. After reviewing the record and the applicable law, the Court agrees.

**Factual Background**

On January 5, 2006, 13,500 Air Express, LLC, through its Managing Member Philippe Tanguy ("Tanguy") executed a Purchase Agreement with Debtor Richard D. Davis ("Davis"), General Manager of 13,500 Air Express, LLC.  The same day Tanguy, individually and as General Manager of 13,500 Air Express, LLC, executed a Promissory Note (the "Note")[2] in the amount of $1,237,500.00, payable to Davis for the purchase of a DeHaviland Twin Otter N186AL

---

[2] #2-7, Trustee Exhibit 1.

aircraft, Serial Number 186 ("the aircraft").  Promissory Note, #2-7, Ex. 1; also #2-10.  Under the terms of the Note, payments in 124 monthly instalments in the amount of $10,000 were to be made by Appellants on the fifth day of each month, commencing on January 5, 2007 and to continue until a final payment of $7500 was to be made on April 5, 2017.  Interest at the rate of 10% would apply only to late payments.  On January 26, 2007 13,500 Air Express, LLC, through Tanguy, began making installment payments on the Note to FMS Company[3] through DSGMD, an assumed name under which Davis did business.

On June 12, 2007 Davis filed a voluntary Chapter 7 bankruptcy case, No. 07-33986, and William G. West was appointed trustee.  Therefore the bankruptcy estate, through the Trustee, became the beneficial owner of the Note.

On July 26, 2007 one of Davis' creditors, David Laux ("Laux"), claiming that Davis had fraudulently conveyed the aircraft to Appellants, sued Tanguy[4] in the 165th Judicial District Court of Harris County, Texas, Cause No. 2007-44578, and obtained a

_____

[3] FMS Co. is an unregistered d/b/a of Davis.

[4] According to the affidavit of Philippe Tanguy (#2-19) Laux claimed that he had obtained a judgment against Davis and intended to attach the aircraft, which Davis had sold to Tanguy under the Purchase Agreement and to place a lien on the plane so that he could collect his judgment.  Laux filed suit in Harris County, served Tanguy and 13,500 Air Express, LLC with process in April 2008, and obtained a TRO that judicially attached the aircraft, and later a temporary injunction, which prohibited Tanguy from operating the aircraft, removing it from Texas, and/or selling it.

temporary restraining order that day and a temporary injunction ("TRO") on August 16, 2007, enjoining Tanguy from

> transferring and/or relocating any and all documents, records, and log books, evidencing ownership, maintenance, and any repair work relating to the 1968 DeHaviland Twin Otter N186 aircraft, or encumbering, transferring, and/or relocating from the County in which SkyDive Houston operates the 1968 DeHaviland Twin Otter N186 aircraft.

In September 2007, despite Davis' filing for bankruptcy and the appointment of West as Trustee, Davis assigned the Tanguy Note to JLE Investors, Inc. ("JLE") as collateral for a loan. #2-9. When the Trustee learned of the assignment, he filed Adversary Proceeding No. 07-3496 on December 3, 2004 against JLE and its principal, James Emerson, to recover the Note.[5] On February 26, 2008, the Bankruptcy Court issued an order in Adversary Proceeding No. 07-3496 approving a settlement, which assigned the Note and security interest in the aircraft from JLE back to the Trustee. #2-10. On April 10, 2008 Tanguy signed a stipulation that the Trustee was the holder of the Note and that the Note was in full force and effect. #2-10.

After making nineteen payments totaling $190,000, thereby leaving an unpaid principal balance of $1,047,500.00, Appellants stopped making payments on the Note in November 2008 and repudiated

---

[5] As stated in Tanguy's and 13,500 Air Express, LLC's original answer and original counter-claim in Adversary No. 09-03086, #2-8 at p. 19,"only the Trustee has legal standing to pursue claims or causes of action to determine the nature and extent of assets owned by the Bankruptcy Estate."

their obligations under the Note in January 2009.  On January 5, 2009, the Trustee sent demand letters to Appellants claiming that Appellants defaulted on payments on the Note.  On January 8, 2009 Appellants' attorney sent a letter to the Trustee's counsel placing him on notice of the Laux suit and the temporary injunction that Tanguy insists interfered with Tanguy's and 13,400 Air Express's rights of ownership in the aircraft and demanded that the Trustee honor a duty to defend its title, allegedly pursuant to the covenants and warranties of the Purchase Agreement.  #2-11.  On March 2, 2009 the Trustee sent a default demand, stating that the note balance payable to FMS was accelerated and demanding full payment of the principal balance.  #2-8; #2-10.  On March 4, 2009 the Trustee filed a complaint in Adversary No. 09-3096 against Appellants seeking a turnover of payments owed under the promissory note, plus interest, costs, and attorney's fees for having to defend against Appellants' and their counsel's counterclaim.

On April 6, 2009 Appellants filed an answer and a counterclaim for breach of contract, tortious interference with property rights and prospective property rights, and conspiracy to interfere with property rights and prospective property rights, along with affirmative defenses of lack of an indispensable party (David Laux), ordinary course of business, equivalent value, unclean hands and bad faith, fraud, *non est factum*, failure of consideration, offset, and reformation and/or rescission.  #2-8.  Appellants'

answer also included a jury demand.

On April 28, 2009, the Trustee filed a motion to strike the jury demand and an answer to Appellants' counterclaims. #2-9. Trustee filed his Pretrial Statement on October 13, 2009, and Appellants filed their Pretrial Statement on October 15, 2009. #2-9. On November 24, 2009, at a pretrial hearing, the Bankruptcy Court granted the Trustee's motion to strike jury demand.

The Adversary Proceeding was tried to the bench on December 14, 2009. The Bankruptcy Court found that the Trustee's evidence was substantially uncontroverted, while Appellants did not offer credible evidence in support of any of their counterclaims or affirmative defenses. On March 30, 2010 the Bankruptcy Court issued its Memorandum Opinion (#2-12 at pp. 7-22) and Judgment (#2-12 at p. 22) in favor of the Trustee and against Appellants, jointly and severally, in the amount of $1,183,090.80, plus $31,180.75 for attorney's fees. The Bankruptcy Court ruled that Appellants were not entitled to any of the affirmative defenses asserted in their answer and that the Trustee was not liable to Appellants on any of the theories pleaded in their counterclaims.

On April 13, 2010, Appellants filed a notice of appeal along with a motion requesting the Bankruptcy Court, and subsequently this Court, to take judicial notice of an opinion issued by the First District Court of Appeals of Houston, Texas, *Tanguy v. Laux*, 259 S.W. 3d 851 (Tex. App.--Houston [1st Dist.] 2008)(copy included

in #2-29), a case in which the Trustee was not a party, and also a motion seeking "amended or additional" findings pursuant to Bankruptcy Rule 7052 (#2-29, memorandum #2-31).  The Bankruptcy Court denied both motions on May 7, 2010.  Then Appellants filed this appeal.

### Issues on  Appeal

Appellants raise six issues on appeal:  (1) whether the Bankruptcy Court erred in striking Appellants' demand for jury trial; (2) whether the Bankruptcy Court's findings and conclusions that Trustee William G. West should recover over $1,000,000.00 on the Note were clearly erroneous and contrary to the law; (3) whether the Bankruptcy Court's findings and conclusions that Trustee West committed no breaches of contract or warranty under the purchase agreement were clearly erroneous and contrary to law; (4) whether the Bankruptcy Court erred when it denied Appellants' motion requesting further findings of fact and conclusions of law on issues raised in Appellants' pretrial statement; (5) whether the Bankruptcy Court's award of attorney's fees to Trustee West should be reversed; and (6) whether the Bankruptcy Court erred in denying Appellants' request and motion that it take judicial notice?

### STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, the district court should review conclusions of law and decisions on mixed questions of law and fact *de novo*, while findings of fact should

not be set aside unless clearly erroneous and due regard is given
to the Bankruptcy Court's opportunity to judge the credibility of
the witnesses. *In re Sandburg Financial Corp.*, 446 B.R. 793 (S.D.
Tex. 2011), *aff'd*, 448 Fed. Appx. 415 (5th Cir. 2011); Fed. R.
Bankr. P. 8013. A finding is "clearly erroneous" when, even in the
presence of supporting evidence, the reviewing court is left with
the definite and firm conviction that a mistake has been committed.
*Carol v. Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005). The
appellant bears the burden of demonstrating that a finding of fact
by the bankruptcy court is clearly in error. *Perry v. Dearing*, 345
F.3d 303, 309 (5th Cir. 2003). "As long as there are two
permissible views of the evidence, we will not find the
factfinder's choice between competing views to be clearly
erroneous." *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005), *citing*
*Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). "If the
bankruptcy court's account of the evidence is plausible in light of
the record viewed as a whole, we will not reverse it." *Id*. When
reviewing mixed questions of law and fact, although the reviewing
district court must accept the Bankruptcy Court's factual findings
unless they are clearly erroneous, the district court "must
independently determine the ultimate legal conclusion adopted by
the bankruptcy judge on the basis of the facts found." *Multi-Mart*
*Branch Office, First State Bank v. Appliance Buyers Credit Corp.*
*(In re Bufkin Bros., Inc.)*, 757 F.2d 1573, 1577-78 (5th Cir. 1985);

-8-

*In re Gervin*, 300 Fed. Appx. 293, 298 (5th Cir. Nov. 21, 2008).

The Bankruptcy Court issued its fifteen-page Memorandum Opinion (#2-12, pp. 7-21), with Findings of Fact and Conclusions of Law, along with the Judgment (#2-12 at p. 22) in Adversary Proceeding 09-3096 on March 30, 2010.

## Issue #1:  Right to Jury Trial

The Court concludes as a matter of law that the Bankruptcy Judge did not err in striking Appellants' demand for a jury trial. The Seventh Amendment guarantees a right to trial by jury in "[s]uits at common law."  U.S. Const. amend. VIII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."). The Supreme Court has construed this phrase "to refer to suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989), *citing Parsons v. Bedford*, 3 Pet. 433, 447, 7 L. Ed. 732 (1830).  To determine whether a suit involves legal as opposed to equitable rights, the Supreme Court established a two-step analysis:

> "First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is

legal or equitable in nature." . . . The second stage of
this analysis is more important than the first. . . . If,
on balance, these two factors indicate that a party is
entitled to a jury trial under the Seventh Amendment, we
must decide whether Congress may assign and has assigned
resolution of the relevant claim to a non-Article III
adjudicative body that does not use a jury as factfinder.

*Id.* at 42, *quoting Tull v. United States*, 481 U.S. 412, 417-18

(1987).  If a party joins equitable claims with legal claims, the

right to a jury trial on the legal claims is preserved.  *Curtis v.*

*Loether*, 415 U.S. 189, 196 n.11 (1974)("If a legal claim is joined

with an equitable claim, the right to a jury trial on a legal

claim, including all issues common to both claims, remains

intact.")  "This jury right cannot be dispensed with, except by the

assent of the parties entitled to it, nor can it be impaired by any

blending with a claim, properly cognizable at law, of a demand for

equitable relief in aid of the legal action or during its

pendency." *Beacon Theatres v. Westover*, 359 U.S. 500. 510 (1959).

In addition, even if it is a legal claim, the Seventh

Amendment guarantee does not entitle a party to a jury trial on a

claim that asserts a public right.  *Id.* n.4 ("The Seventh Amendment

protects a litigant's right to a jury trial only if a cause of

action is legal in nature and it involves a matter of 'private

right.'); *see also In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991),

*overruled on other grounds*, *Conn. Nat'l Bank v. Germain*, 503 U.S.

249 (1992).

Under *Thomas v. Union Carbide Agric. Prods. Co.*, a right
closely integrated into a public regulatory scheme may be

> resolved by a non-Article III tribunal.   473 U.S. 568,
> 593 (1985).   The Bankruptcy Code is a public scheme for
> restructuring debtor-creditor relations, necessarily
> including "the exercise of exclusive jurisdiction over
> all of the debtor's property, the equitable distribution
> of that property among the debtors' creditors, and the
> ultimate discharge that gives the debtor a 'fresh start'
> by releasing him, her or it from further liability for
> old debts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356,
> 363-64 (2006); *see N. Pipeline Constr. Co. v. Marathon
> Pipe Line Co.*, 458 U.S. 50, 71 (1982)(plurality
> opinion)(noting in dicta that the restructuring of
> debtor-creditor relations "may well be a 'public
> right.'").

*In re Frazer*, Bankruptcy No. 11-36667. Adv. No. 11-03484, 2012 WL 719412, *5 (Bankrtcy. S.D. Tex. Mar. 5, 2012); *In re Capco Energy, Inc.*, 2012 WL 253140, *1 (Bkrtcy. S.D. Tex. Jan 25, 2012).  Usually making a claim against the bankruptcy estate triggers the claims allowance process, which the Supreme Court concluded was a public right in *Granfinanciera*, 492 U.S. at 59, as well as the bankruptcy court's equitable power to allow or disallow claims.  *In re British American Properties, III*, 369 B.R. 322, 329 (Bkrtcy. S.D. Tex. 2007).

The Trustee points to case law holding that when a trustee breaches his fiduciary duty, it falls to the equitable power of courts to enforce his fiduciary duties.  *In re Sunshine Trading & Transp. Co.*, 193 B.R. 752, 757 (Bkrtcy. E.D. Va. 1995), *citing Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 757 (4th Cir. 1993); *Hallock v. Key Federal Savings Bank (In re Silver Oak Homes, Ltd.)*, 167 B.R. 389 (Bkrtcy. D. Md. 1994);

-11-

*Fairway Investments Trust, Ltd. v. Wright (In re American Solar King)*, 142 B.R. 772, 776 (Bkrtcy. W.D. Tex. 1992)(action against a trustee for misconduct in administering the estate is equitable and thus plaintiffs had no right to a jury trial); *Baskin v, Wade (In re Brenner)*, 119 B.R. 495 (E.D. Pa. 1990)(suit against a trustee is a public action because it involves the administration of the bankruptcy case; duty of administering a bankruptcy case was congressionally-created and therefore "public" and falls within the summary jurisdiction of the bankruptcy court and not jury trial is available); *Grassmueck v. Foster (In re E Z Feed Cube Co.)*, 115 B.R. 684, 689 (Bkrtcy. D. Ore. 1990)(action against trustee is equitable in nature because he may be surcharged for wrongful conduct or negligence; plaintiff not entitled to jury trial). *See also In re Carter Paper Co.,* 220 B.R. 276, (Bkrtcy. M.D. La. 1998)("the vast majority of courts to rule on the issue has held that breach of fiduciary duty actions are equitable actions.")(and cases cited therein).

Furthermore, a legal claim to which the right to a jury attaches may be converted into an equity claims without a right to a jury where the party asserting it "participates in" the bankruptcy case. *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).[6]

_____

[6] As explained by the bankruptcy court in *In re Paige*, Bankruptcy No. 04-20147-RLJ-7, Adv. No. 07-2015, 2007 WL 4530807, *4 (Bkrtcy. N.D. Tex. Dec. 19, 2007),

The Supreme Court has held that a bankruptcy court sits

For instance, a party in an adversary proceeding who also files a claim as a creditor in the bankruptcy case in which the adversary proceeding is pending loses his right to a jury if "by filing a claim against [the] bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power." *Id.* at 44, *cited for that proposition, In re Paige*, Bankruptcy No. 04-20147-RLJ-7, Adv. No. 07-2015, 2007 WL 4530807, *3 (Bkrtcy. N.D. Tex. Dec. 19, 2007). *See Granfinanciera*, 492 U.S. at 57 (when claims arise as part of the process of allowance and disallowance of claims, they are triable in equity because the bankruptcy court has actual or constructive possession of the res.). Adversary defendants who bring counterclaims against a Chapter 7 trustee in his representative capacity, as is the case here in the in-state Adversary Proceeding, implicate the claims allowance process and waive their right to a jury trial. *Anderson v. Simchon (In re Southern Textile Knitters, Inc.)*, 236 B.R. 207, 210 (D.S.C. 1999);

---

both as a court of law and as a court of equity. *See Granfinancier*, 492 U.S. at 57. Legal claims are not converted into equitable claims merely because they are asserted in a court of equity. *See Ross v. Bernhard*, 396 U.S. 531, 538 . . . (1970)("legal claims are not magically converted into equitable issues by their presentation to a court of equity.") However, when such claims are asserted solely under the court's equity jurisdiction, such claims have been converted to essentially equitable claims to which no jury rights attach. *Katchen v. Landy*, 382 U.S. 323, 337 . . . (1966).

-13-

*In re Sunshine Trading & Transportation Co.*, 193 B.R. 752, 756 (Bkrtcy. E.D. Va. 1995)(holding that a "claim" is not limited to the filing of a "proof of claim"; "when the claims-allowance process is triggered, the bankruptcy court's equitable jurisdiction is also triggered, thereby rendering the right to a trial by jury waived."); *See also Bayless v. Crabtree*, 108 B.R. 299, 304 (W.D. Okla. 1989)(same), *aff'd*, 930 F.2d 32 (10th Cir. 1991); *In re Paige*, 2007 WL 4530807 at *3 ("When issues arise as part of the process of allowance or disallowance of claims, such issues are triable in equity."; "As with the filing of a proof of claim, a counterclaim that seeks affirmative relief against the bankruptcy estate may trigger the allowance and disallowance of claims process, and thus subject the defendant to equity jurisdiction of the bankruptcy court."), *citing Granfinanaciera*, 492 U.S. at 58, and *In re M & L Bus. Mach. Co.,* 178 B.R. 270, 272 (Bkrtcy. D. Colo. 1995)("[A]s a number of recent cases have held, the filing of a counterclaim in an adversary proceeding will stand as a proof of claim against the bankruptcy estate, causing the defendant to lose his Seventh Amendment right to a jury trial.")(and cases cited therein).

In *In re Endeavor Highrise, L.P.*, 425 B.R. 402, 409-13 (Bankr. S.D. Tex. March 12, 2007), Bankruptcy Judge Jeff Bohm discussed the split in case law over the issue whether, when a trustee files a complaint against a defendant who has not filed a proof of claim against the estate and the defendant files a claim against the

estate in the form of a counter-claim against the trustee, the defendant loses his right to a jury trial. In particular he discusses several cases, relevant here, which concluded that the defendant waived its right to a jury trial because the counterclaim triggered the bankruptcy court's process of allowance and disallowance of claims, thus submitting to the equity jurisdiction of the bankruptcy court. In *In re Hudson*, 170 B.R. 868 (E.D.N.C. 1994), the trustee filed a complaint alleging that the defendant had failed to pay the debtor $67,000 pursuant to a contract between the parties. The defendant filed a response and a counterclaim denying that it owed the money and, with a jury demand, seeking "'a sum to be assessed by a jury in order to compensate this [d]efendant for its losses . . ." *Endeavor*, 425 B.R. at 412, *citing Hudson*, 170 B.R. at 870. In *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990), the Supreme Court opined, "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims [which is triable only in equity],' thereby subjecting himself to the bankruptcy court's equitable power. . . . In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such there is no Seventh Amendment right to a jury trial. *In Hudson*, the court observed that the emphasis in *Langenkamp* "'was not on the

procedural posture [of] the trustee's action . . ., but on the creditor's submission to the bankruptcy court's equity jurisdiction in filing its answer and counterclaim, 'even though the defendant did not file any claim with the bankruptcy court before the trustee filed his complaint.'" *Endeavor*, 425 B.R. at 412-13, *citing Hudson*, 170 B.R. at 875.   Judge Bohm also cited *In re Lloyd Securities, Inc.*, 156 B.R. 750, 754 (Bankr. E.D. Pa. 1993)(finding that the defendant waived his right to a jury trial because "(1) his counterclaim sought 'affirmative relief against the Debtor/Trustee' (and is therefore a claim against the estate); and (2) the counterclaim was based on pre-petition claims of the defendant (and thus was, again, a claim against the bankruptcy estate)." *Endeavor*. 425 B.R. at 413.   Finally, Judge Bohm addressed *In re Warmus*, 252 B.R. 584, 586-87 (Bankr. S.D. Fla. 2000), in which the defendants filed a counterclaim for fraud and argued that it did not waive their right to a jury trial because it was a compulsory counterclaim.   *Endeavor*, 425 B.R. at 413.   The *Warmus* court concluded that "'the mandatory or permissive nature of the [c]ounterclaim is irrelevant because the counterclaim seeks damages from the estate, which is subject to the bankruptcy court's equitable powers.'" *Id., citing Warmus*, 252 B.R. at 588.   Finally in *In re Commercial Fin. Servs.*, 251 B.R, 397, 400, 406-08 (Bankr. N.D. Okla. 2000), in which the defendant did not file a counterclaim but raised an affirmative defense of setoff, the court

found that logically he could not assert that claim without also asserting a claim against the estate, and thus the defendant consented to the equity jurisdiction of the bankruptcy court. *Endeavor*, 425 B.R. at 413.  Judge Bohm opined, "In sum, many courts have held that a counterclaim against the estate (or property of the estate) serves as the functional equivalent of a proof of claim, and therefore that filing a counterclaim constitutes a waiver of the right to a jury trial and consent to the equity jurisdiction of the bankruptcy court." *Id.*  *See generally* Leslie R. Masterson, *Waiving the Right to a Jury:  Claims, Counterclaims, and Informal Claims*, 85 Am. Bankr. L.J. 91 (Spring 2011).

Here the trustee filed a complaint seeking turnover of payments owed under a promissory note, signed pre-petition, and Appellants counterclaimed against the Trustee for breach of contract, tortious interference with property right and prospective property rights, and conspiracy to interfere and sought actual damages in the amount of $1,000,000 against the estate.  This Court finds that the same situation discussed in the cases above is true in the instant Adversary Proceeding, i.e., that Appellants waived their right to a jury trial by filing these counterclaims and consented to the equity jurisdiction of the Bankruptcy Court, and accordingly affirms the Bankruptcy Court's striking of the jury demand.

The next three issues raised by Appellants overlap factually,

so the Court addresses them together.

**Issue 2:** Findings and Conclusions that Trustee William G. West should recover over $1,000,000.00 on the Note

**Issue 3:** Findings and Conclusions that the Trustee Committed No Breaches of Contract or Warranty under the Purchase Agreement

**Issue 4:** Denial of Appellants' Motion (#2-30, and Memorandum, #2-31) Requesting Further Findings of Fact and Conclusions of Law on Affirmative Defenses and Claims Raised in Appellants' Pretrial Statement because the Bankruptcy Court failed to specially address Appellants' affirmative defenses and counter claims in its Findings of Fact.

Appellants object that the Trustee has no right to recover the consideration due under the Note without performing and complying with the covenants and warranties under the Purchase Agreement. Appellants argue that the Trustee stands in the shoes of the Debtor, Davis, and is therefore subject to all defenses that would have been available to the Appellants against the Debtor.  They charge that the Trustee ignored and violated the warranties, covenants and conditions in the Purchase Agreement in the following ways:  the aircraft was not delivered in "good condition and repair" because it was missing logbooks (which "identify performance of required maintenance, and compliance with

airworthiness directives of the FAA"[7] and whose absence greatly diminishes the value of the aircraft and marketability, according to trial testimony); the aircraft was subject to the liens and encumbrances, specifically the claims of Laux; and the Trustee failed to indemnify Appellants and hold them harmless by refusing to defend them against state court claims and demands by Laux that disparaged and impugned their title to the aircraft.  Appellants in addition assert that the Trustee encouraged Laux to interfere with the title of the aircraft and thus breached the warranty of title in the Purchase Agreement.   Appellants also claim that the consideration for Tanguy's signing of the Stipulation, which returned the Note to the Trustee with the acknowledgment that the Trustee was the valid holder of the Note and that the Note was in full force and effect, was the Trustee's promise to obtain the dismissal of Laux's state court action, which the Trustee never even sought to obtain.  Thus, argue Appellants, the Stipulation was void for lack of consideration and the Trustee should not be entitled to recover the over $1,000,000 judgment entered by the Bankruptcy Court.

Appellants further assert that in addition to express warranties in the Purchase Agreement, the Trustee also violated the implied warranties of title and other warranties recognized by

---

[7] Bankruptcy Judge's Memorandum Opinion, #2-12 at pp. 13-14, summarizing testimony of Kevin Williams, an inspector with National Aerotech.

Texas courts to apply to transactions in which personal property is conveyed by Bill of Sale. They claim that they are entitled to damages for breach of warranty of title, as well as recovery of attorney's fees based on the breach of the indemnity provisions of the Purchase Agreement. They suggest that this amount might offset a portion of the indebtedness due under the Note. Because the Trustee failed to defend the title to the aircraft, Appellants argue that they are entitled to damages, i.e., the diminution in the value of the aircraft, as well as loss of income from leasing the aircraft, as established by the owner's opinion of value and by direct expert testimony. They alternatively maintain that the Trustee's breaches of covenants, conditions, and warranties under the Purchase Agreement were so extensive as to require rescission of the purchase Agreement and the return of all of Appellants' monies, at the election of Appellants.

This Court defers to the Bankruptcy Court's credibility findings based on face-to-face evaluation during the trial. #2-12 at pp. 12, 17. It also concludes that the Bankruptcy Court correctly stated the law and applied it to the facts before her.

The Bankruptcy Court found "not credible" Tanguy's testimony that the Trustee or his attorney made an oral promise to defend Tanguy's title to the aircraft that constituted consideration for Tanguy's signature on the Stipulation in Adversary Proceeding No. 07-3496. Moreover, in support of her finding, the judge pointed

out that while the Trustee's counsel testified in Laux's state
court suit, the Trustee was not a party to that action and could
not support Tanguy's position in that court action.  #2-12 at p.
17.  Moreover, she found implausible the idea that the Trustee
would have given such a promise since the aircraft was still being
used by Skydive Houston, an entity under the Debtor's control, and
leased to skydivers.   Thus she concluded that the Stipulation,
signed by Tanguy and stating that the Trustee is the owner and
holder of the Note, was enforceable.[8]  She expressly found that
Defendants failed to present any credible evidence showing that the
Trustee acted with unclean hands or in bad faith.  #2-12 at p. 19.
This Court also concurs with the Bankruptcy Court's conclusion that
the argument that the Stipulation is void for lack of consideration
is meritless.   Appellants fail to point to any controverting
evidence in the record on appeal.   Moreover Appellants' claim that
the Trustee is liable for damages created by a possible cloud on
the title of the aircraft caused by Laux's lawsuit cannot be

---

[8] The Bankruptcy Judge also correctly pointed out the law in
Texas that

> [w]henever possible, courts should give effect to
> voluntary agreements freely made between the parties.
> *Johnson v. Swain*, 787 S.W. 2d 36 [38] (Tex. 1989).  When
> parties stipulate to facts, these stipulations are
> binding upon the parties and the court.  *M.J.R.'s Fare of
> Dallas, Inc. v. Permit and License Appeal Bd. of Dallas*,
> 823 S.W. 2d 327 [331] (Tex. App.--Dallas 1991, writ
> den.).

#2-12 at p. 16.

sustained.   As found by the Bankruptcy Court, there is no evidence demonstrating that Laux's state court action was brought in bad faith or improperly.   This Court finds no error in the Bankruptcy Judge's determinations.

Appellants also argue that Laux and JLE were indispensable parties because they acted as agents of the Trustee.   The Bankruptcy Judge found that Appellants presented no credible evidence of any agency relationship between the Trustee and Laux/JLE, necessary for Defendants' asserted defenses of offset, reformation and/or rescission. Memorandum Opinion, #2-12 at p. 19. The Bankruptcy Court also concluded there was no evidence of wrongful acts by Laux or JLE, and no evidence of tortious interference or conspiracy.  Memorandum Opinion, #2-12 at pp. 19-21.   Therefore she determined that the Trustee was not liable to Appellants on Appellants' counterclaim.  *Id.* at 21.  Again this Court finds that Appellants fail to identify any evidence in the record to challenge, no less controvert, the Bankruptcy Court's findings.

As for the Bankruptcy Court's rejection of the claim for breach of warranty that the aircraft was in good condition, she pointed out that it was used after the sale in skydiving operations from January 2006-August 2009.  The Bankruptcy Judge, also finding that Tanguy took possession of the aircraft after the sale and continued to lease it, determined that Appellants provided no

evidence that the Debtor concealed the logbooks from Tanguy; instead, it was only after more than two years after Tanguy bought the aircraft that Tanguy learned that some of the logbooks were missing.[9]  The Bankruptcy Court further found that Appellants failed to produce any evidence of the value of the aircraft at the time they executed the Purchase Agreement and whether such a value took into account the absence of the logbooks.  She concluded that "the connection between the absence of logbooks during late 2008 and any warranty [was] too tenuous to support a finding of a failure of consideration for the sale [in 2006]."  #2-12 at p. 20.

The Bankruptcy Court correctly found several of Appellants' defenses to be irrelevant to the facts here.  Receipt of reasonably equivalent value and ordinary course of business, which might be appropriate in a preference complaint, are not applicable to a suit on a note, such as the one on appeal here.  #2-12 at 19.  A *non est factum* defense is defined by *Black's Dictionary* a "a pleading denying execution of instrument sued upon":  as the Bankruptcy Court observed, Tanguy himself testified that he had executed the note, thus negating that defense.[10]  *Id.*  While Appellants argue

---

[9] The Bankruptcy Court explained that Tanguy only learned of the missing logbooks from Todd Bell, who had been skydiving from the aircraft since 2004 and who purchased Skydive Houston in 2008 and did a title search.  #2-12 at p.12.

[10] This Court observes that the Magistrate Judge granted Trustee's Emergency Motion to Compel Filing and Service of Transcripts (#8).  #9.  In that order she required Appellants to "file and serve to Trustee all transcripts in connection with this

that any claim to a secured interest in the aircraft by the Trustee fails for lack of consideration, the Trustee, although pleading that the Note was secured by the aircraft, has not sought to recover the aircraft or its value in this Adversary Proceeding. *Id.*

In sum, this Court finds that the Bankruptcy Court addressed all of Appellants' issues and did not err in her findings of fact or conclusions of law.

**Issue 5**: Award of Attorney's Fees to Trustee West

As the Bankruptcy Court stated in its Memorandum Opinion, #2-12 at p.18 in Adversary Proceeding 09-3096, Section 38.001(8) of the Texas Civil Practice and Remedies Code authorizes recovery of reasonable attorney's fees for a successful suit on a written contract, the Note. Moreover, the record contains extensive and detailed time records of fees incurred by the Trustee for services provided by his counsel at Porter & Hedges, LLC., justifying the Bankruptcy Court's reasonable fee award of #31,180.75. #2-11 at pp. 6-20, #2-12 at pp. 1-6. The Trustee also points out that Appellants had the opportunity to cross examine him at the trial and to present rebuttal evidence, but never submitted any such evidence. This Court finds that the fee award is not clearly

_____

appeal." While the Trustee acknowledges that he was served with the transcripts, Appellants never filed them in this appeal and therefore failed in their duty to provide them as part of the record.

erroneous and affirms the Bankruptcy Court's decision.

**Issue 6**: Denial of Request that the Bankruptcy Court Take Judicial Notice of Texas Appellate Opinion

Appellants failed to introduce the opinion, *Tanguy v. Laux*, 259 S.W. 3d 851 (Tex. App.--Houston [1st Dist.] 2008)(copy included in #2-29), during their presentation of evidence in the bankruptcy court, even though it was issued on June 24, 2008, almost eighteen months before trial in this Adversary Proceeding on December 14, 2009. Moreover, Appellants did not ask the Bankruptcy Court to take judicial notice of the opinion until April 13, 2010 when they filed their notice of appeal. As a general rule, courts will not take judicial notice of materials not presented to the trial court, nor will they enlarge the record on appeal to include material not before the trial court. *Kemlon Prods. & Dev. Co. v. United States*, 646 F.2d 223, 224 (5th Cir. 1981), *cert. denied*, 454 U.S. 863 (1981); *Board of Mississippi Levee Com'rs v. U.S.E.P.A.*, ___ F.3d ___, No. 11-60302, 2012 WL 695844, *10 n.4 (5th Cir. Mar. 6, 2012), *citing United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir. 1995)("requests for the Court to take judicial notice of evidence not presented to the district court 'constitutes an impermissible attempt to supplement the record on appeal'"), *cert. denied*, 516 U.S. 833 (1995), and *Kemlon* (refusing to take judicial notice after rejecting an attempt to supplement the record on appeal.). The Bankruptcy Court did not err in denying Appellants' motion to take

judicial notice.

Accordingly, for the reasons stated above, the Bankruptcy Court's Memorandum Opinion and Judgment are AFFIRMED and this appeal is DISMISSED with prejudice.

Moreover, this Court agrees with Appellee that because this appeal was frivolous, Appellants should reimburse the Trustee for fees and costs.  Thus the Court

ORDERS the Trustee to submit within twenty days a request for reasonable and necessary fees and costs with supporting documentation.  Appellants shall file a response within ten days of receipt of the Trustee's submission.

**SIGNED** at Houston, Texas, this __10th__ day of__July__, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE